EMERY, PLAINTIFF-APPELLEE, *v.* STANDARD OIL COMPANY, DEFENDANT-APPELLANT.

Ohio Appeals, Ninth District, Summit County.

No. 5298.   Decided February 13, 1963.

194

*Messrs. O'Neill & Smith,* for plaintiff-appellee.
*Messrs. McAfee, Hanning, Newcomer, Hazlett & Wheeler,* for defendant-appellant.

(SKEEL, J., of the Eighth District, sitting by designation in place of STEVENS, J.)

SKEEL, J. This appeal comes to this court on questions of law from a judgment entered on the verdict of a jury after the trial of the issues in the Municipal Court of Akron. The plaintiff, on the evening of December 3, 1959, shortly after 6:00 P. M., was a passenger in her husband's automobile which he was driving in a northerly direction on Jacoby Road in Copley Township, Summit County, Ohio. Shortly after the driver turned north from his driveway on Jacoby Road, he observed a Standard Oil fuel oil delivery truck quite a distance ahead, also proceeding north, which he said was moving at a slow rate of speed. When the automobile in which plaintiff was a passenger approached the oil truck, the driver (plaintiff's husband), in describing the collision which occurred when he attempted to pass the truck just as it turned left into a private driveway, said:

"I followed him for a car length, between his car and my car and his truck for a distance of a couple of hundred foot.
"* * *
"Well, he was almost stopped, and when I decided to pass him—
"Q. Almost stopped?
"A. Well, he was hardly moving.
"Q. What speed was he going when you were behind him, if you know?
"A. I don't know that.
"* * *
"Q. And then what did you do next?
"A. I blinked my lights two or three times and passed him.
"Q. Did you blink your lights before you pulled out to pass him or after you pulled out to pass him?

"A. Well, I blinked my lights and then started passing and then blinked my lights again, and I blinked my lights when I was behind and when I was going around.

"Q. As you say, you were going around him; where was your car with reference to the truck when you last blinked your lights, do you remember?

"* * *

"Q. Now, will you tell the jury what the truck did and what you did from the time you pulled out to pass him until the two vehicles came together?

"A. Well, when I pulled out to pass him, I was getting ready to go around, and he turned—he was turning. He made a left-hand turn in front of me, he was turning left when I was passing on the left side, and maybe I seen the back end, so I thought I was going to try to miss hitting him, and I was going to turn the same way he was turning so as to miss him, and on the front end of the cab, behind the cab and in front of the tank, so I tried—then I turned the other way to try to miss him and go around behind him, and that's how I hit his back corner, right behind his back wheel."

This witness also testified:

"Q. Now, did you tell the State Patrol officer that you had seen this truck for a considerable distance when you were behind it; that you were on your way to work and that you were proceeding at somewhere between 40 and 50 miles per hour?

"A. Well, when I went to pass, I was moving around 40 to 50 miles an hour. I followed it for a distance.

"* * *

"Q. Now, you came up behind this truck and you told Mr. Smith and the ladies and gentlemen on the jury that this truck appeared to be moving very slowly; is that right?

"A. That's right.

"Q. It was almost stopped, wasn't it?

"A. Well, I followed it for a little ways, slow, and I figure it was almost stopped, and that's why I passed him, because he did not have any turn signals, and he was going to turn, so that's when I gave him the signal that I was going to go around him when he turned in front of me when I passed—

"Q. And you were right behind him, as I understand you

to say, when you first blinked your lights; is that correct? You blinked your lights several times?

"A. Yes."

From the record of this witness's testimony, it is clear that he did not sound an audible signal when starting to pass the truck but instead seems to have depended on blinking his lights, a procedure not suggested by traffic law.

This witness further testified:

"Q. Anyhow, you pulled to the left, and then, as I got your description of the accident, the truck was bearing left around you, is that right; he was starting to move over to the left as you were going forward along his side?

"A. I was already past. I was in the passing zone going around when he was turning in front of me.

"Q. Had the front of your car gone past his car when you passed his rear, according to your description of it?

"A. Yes.

"Q. And is it your story that you then cut back to the right?

"A. I tried following with him for a while to try to turn the same way he was turning to keep from hitting, and I seen I was going to hit him toward the cab, or the back of the cab, or the front of the truck—

"Q. You mean you were right along the side and you saw him swinging?

"A. That's right.

"Q. And according to what I thought you said, you cut right and hit him on the right end?

"A. I tried to cut back out and that's how I hit him in the back end."

The plaintiff's testimony, in part, corroborates the testimony of her husband except that she thinks he is "a little off" on distance. She testified, as did her husband, that she did not see a turning light signal operation on the back of the truck to indicate that the truck driver was going to make a left turn. She gave some evidence that skid marks were observable on the pavement resulting from her husband's application of his brakes but denies that they extended back 60 feet from the place where the plaintiff's husband came to a stop at a point almost completely off the paved portion at the highway on the left hand

side of the road heading north. The plaintiff's brother-in-law, who was at the scene of the accident, within a few minutes after it occurred, testified that he measured the skid marks and that they were about 39 feet in length.

The defendant's truck driver gave his version of the accident as follows:

"Q. Now, will you tell his Honor and the jury just what happened there on the night of December 3rd, '59?

"A. Well, I was making my approach north on Jacoby Road, I made a previous delivery on my regular route of 100 gallons of oil; I had a full tank, approximately 2200 gallons, 2100 after the hundred-gallon delivery, and I was going north on Jacoby, I was driving approximately 25 miles an hour, until I started to make—slow down for my approach into the driveway, and then I reduced my speed to 10 or 15 miles per hour, and I checked in my rear view mirror, or I knew there was a car behind me, but I could see no reason why I should take undue precaution as I always take, or as I usually take, or take any more extreme effort every time I approach or turn into a driveway, so I made my signal and proceeded to turn in the driveway as I normally would.

"Q. What happened?

"A. Well, as I got about a third of the way into the driveway, I don't recall seeing—I knew the car was behind me, I did not notice anyone trying to pass me until I got a third of the way in the driveway, I would say, the back wheels was off the pavement and I felt the car hit me, it was a complete surprise. I did not think he was going to hit me.

"Q. Where did he hit you?

"A. In the rear of the wheels. The impact tore the mud flaps off the back of the truck."

This witness testified that all of his lights were on, including clearance lights, that before he started to turn left, he put on his turning signal, and that he did not hear a horn blow. He further testified that when he started to make the turn, the automobile in which the plaintiff was a passenger was about 140 yards behind him. One of defendant's employees, who was called to the scene of the accident just after it occurred, testified that he observed the skid marks, which were measured by a State Patrol Officer, and in his judgment the marks extended

back between 50 to 60 feet. It must be evident that if in attempting to avoid colliding with the Standard Oil truck, which was then making a left hand turn into a private driveway the automobile in which plaintiff was riding when injured skidded 60 feet or even 39 feet before it could be stopped, the plaintiff's husband's version of how the accident occurred and that of the plaintiff, could not be supported.

The errors claimed by the defendant are:

"1. The trial court erred to defendant's prejudice in its general charge by instructing the jury that defendant was required to give way to its right upon an audible signal from the passing automobile in which plaintiff was riding.

"2. The trial court erred to defendant's prejudice in its general charge by instructing the jury that defendant was required to give an audible signal prior to making its left turn.

"3. The trial court erred to defendant's prejudice in its general charge by instructing the jury that defendant was liable if it had been negligent without stating the requirement that such negligence must have been the proximate cause of plaintiff's injury.

"4. The trial court erred to defendant's prejudice in its general charge by instructing the jury that defendant was liable unless the accident was due to the sole negligence of plaintiff's husband."

The first claim of error is well taken. While it is true that Section 4511.27 (B), Revised Code, provides that:

"* * * the operator of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle at the latter's audible signal * * *."

as charged by the court, the record shows that no such audible signal was given by the driver of the automobile in which plaintiff was riding, nor is any claim of negligence set out in plaintiff's petition grounded on a violation of this provision of the statute. A case is to be tried on the issues set out in the pleadings. The flashing of driving lights, as a means of notifying the driver of a vehicle which the driver of the overtaking vehicle desires to pass and then attempts to pass, cannot be substituted for the requirements of the statute of giving an audible signal. This claim of error, clearly established, was prejudicial to the defendant's rights.

The second claim of error is also well taken. The court charged the jury as follows:

"* * * no person shall turn a vehicle from a direct course upon a highway until such person has exercised due care to ascertain that the movement can be made with reasonable safety to other users of the highway and then only after a clear audible signal outside the vehicle. * * *"

This statement of the law is based on Section 4511.39, Revised Code. The word "audible" found in this section, applies to warning pedestrians and has no application to that part of the rule with respect to a vehicle making a left hand turn into a private driveway. The plaintiff suggests that the statement is so patently wrong that no juror would be "naive" enough to be mislead by its use in the charge as quoted. We cannot give credence to a claim that jurors are to judge the accuracy of rules given to them by the court as the law of the case and that if they believe the charge wrong, to disregard it. This part of the charge, set out as error, was clearly wrong and prejudicial to the rights of the defendant.

One of the purposes in setting out some of the evidence in the first part of the opinion was to demonstrate that one of the basic issues between the parties is that of proximate cause. This was because of the conflicting evidence depicting the conduct of the defendant's truck driver and the plaintiff's husband in the management of their respective vehicles at and before the time of the collision. The last two claims of error are concerned with the court's instructions on the question of proximate cause. There is no question but that in the early part of the charge, the court defined negligence and proximate cause and instructed the jury that the plaintiff, in order to recover, must establish by the preponderance of the evidence both negligence on the part of defendant's truck driver in one or more of the alleged claims of negligence in plaintiff's petition and must also show that such negligence was the proximate cause of plaintiff's alleged injuries. However, in a later part of the charge, the court, after stating that the negligence of plaintiff's husband, if shown, cannot be imputed to plaintiff, charged the jury:

"* * * so in the event you find from all of the evidence by

the required degree of proof that the Defendant was solely responsible for this accident, then your verdict shall be for the Plaintiff.

"In the event you find that the accident was due to the negligence of both the operator of the Emery vehicle and the Defendant's truck your verdict shall be for the Plaintiff.

"On the other hand, if you find that the accident was caused by the sole negligence of the operator of the Emery automobile, then your verdict shall be for the Defendant, the Standard Oil Company.

"To paraphrase it and put it another way, unless you find that the accident was due to the negligence, to the sole negligence of the operator of the Emery automobile, then your verdict must be for the Plaintiff."

It is perfectly clear that the court used the word "fault" as meaning "negligence" as shown by the last paragraph above quoted. The rule that the plaintiff must show proximate causation is completely omitted. There is, therefore, a direct conflict between a correct statement of the rule in the first part of the charge and the incorrect statement as just quoted. This conflict must have confused the jury. They asked for further instruction on the subject which, when given, omitted, once again, the question of proximate cause. We, therefore, sustain this claim of error.

The fourth claim of error is also well taken. The court instructed the jury that unless the plaintiff's husband's negligence was the sole cause of the collision resulting in injury to the plaintiff, then the plaintiff may recover from the defendant. Such a charge directed the jury to hold that unless the evidence shows that plaintiff's husband's negligence was the sole cause of the accident, a question which is not in issue, then the defendant must have been negligent and such assumed negligence was the proximate cause of plaintiff's alleged injuries. The jury should not be permitted to indulge in such assumption.

For the foregoing reasons, the judgment is reversed and the cause remanded for further proceedings according to law.

Judgment reversed and cause remanded.

Hunsicker, P. J., Doyle, J., concur.